By the Court.
The eity of Ironton on the 6th day of December, 1897, enacted ordinance No. 618, which ordinance granted to Otto Germer, Jr., and Joseph P. O’Brien, a franchise to nse the streets, etc., of the city of Ironton for a period of twenty-five years for the laying of pipes and mains to be used for the purposes of supplying the inhabitants thereof heat and power by means of natural gas or other substances.
Section 5 of the franchise-ordinance reads as follows :
“That said Otto Germer, Jr., and Joseph P. O’Brien, their associates or assigns, as a condition of the exercise of the privileges and grants herein contained, or any of them, shall furnish for public or private use, to said city and its inhabitants, such natural gas or other substance for the purposes aforesaid at any rate not exceeding twenty-seven and one-half (27%) cents per one thousand (1,000) cubic feet, with two and one-half (2%) cents per one thousand (1,000) cubic feet reduction for prompt payment monthly within ten (10) days after notice to consumer, provided, that the pressure of said gas supplied to the city and consumer shall be four (4) ounces in summer and eight (8) ounces in winter, high pressure mains in city limits shall not exceed seventy-five (75) pounds per square inch, low pressure fourteen (14) ounces.”
The plaintiff in error, The United Fuel Gas Company, is a successor of Otto Germer, Jr., and Joseph P. O’Brien, by successive assignments.
The plaintiff in error, and those under whom it holds title to the franchise, furnished gas to the inhabitants of the city at the rate fixed in the fran *175 chise-ordinance until the 19th day of November, 1909, when ordinance No. 1122, fixing the rate for ten years at the same price, was enacted and accepted by the company, and gas was furnished thereunder at the prescribed rate until the 1st day of December, 1919.
The plaintiff in error on the 13th day of October, 1919, filed with the public utilities commission a schedule of rates different from the ordinance rates, to become effective the 1st day of December, 1919.
On the 24th day of November, 1919, the council of the city of Ironton adopted an ordinance, which, ordinance reads:
“Ordinance No.-, fixing the price of natural gas.
“Be it ordained by the council of the city of Iron-ton, Ohio.
“That The United Fuel Gas Company, their associates or assigns, as a condition of the exercise of the privileges and grants contained in an ordinance entitled ‘An ordinance to grant the use of the streets, avenues, alleys, lanes, and public places of the city of Ironton, Ohio, for the period of twenty-five years, to Otto Germer, Jr., and Joseph P. O’Brien, of Erie, Pennsylvania, their associates or assigns, to lay pipes and mains under the surface thereof, to be used for the purpose of supplying its inhabitants with heat and power, by means of natural gas or other substances,’ passed December 6, 1897, or any of them, shall furnish for public or private use, to said city and its inhabitants, for a period of three (3) years from the passage of this ordinance, such natural gas or other substances for the purposes aforesaid at any rate not exceeding *176 twenty-seven and one-half (27%) cents per one thousand (1,000) cubic feet, with two and one-half (2%) cents per one thousand cubic feet reduction for prompt payment monthly within ten (10) days after notice to consumer; provided that the Memorial Hall and all city buildings, except the city water works, shall be provided with natural gas or other substances for heating purposes, free of cost.
“This ordinance shall take effect from and after the earliest period allowed by law.
“Passed November 24, 1919.”
The ordinance last above set forth was not ac eepted by plaintiff in error, and on the 19th day of December, 1919, plaintiff in error filed with the public utilities commission its complaint and appeal therefrom.
A motion to dismiss the appeal was filed before the public utilities commission by the city, which motion was sustained; petition in error was filed in this court, and the order of the commission was affirmed. (United Fuel Gas Co. v. Public Utilities Commission, 103 Ohio St., 168.)
At the same time there was pending in the court of common pleas of Lawrence county this action by the city of Ironton against the United Fuel Gas Company to restrain that company “from fixing the price, charging, exacting, demanding, collecting or receiving, in excess of the rate lawfully established in its said franchise-contract hereinbefore set forth and in the ordinance passed the 24th day of Novemher, 1919, hereinbefore set forth, to-wit: 27% cents per thousand cubic feet,” which cause on the 22d day of January, 1920, was determined by the com *177 mon pleas court in favor of the city of fronton, and injunction granted as prayed.
On the 27th day of January, 1921, an appeal therefrom to the court of appeals of Lawrence county was perfected. On March 2, 1921, leave was granted to the gas company to file an amended answer to the amended petition, and the same was filed on March 10.
On July 5, 1921, a motion was filed for leave to file a second amended answer, by which the gas company sought to raise the issue that the 27% cent rate, as fixed by the ordinance of November 24,1919, was so out of proportion to the cost of service as to amount to a confiscation of its property. The motion was overruled. A demurrer to the amended answer was sustained, and judgment was rendered upon the amended petition' of the city of Ironton and the defendant was enjoined from charging a rate in excess of the rate fixed in the franchise-contract of December 6,1897.
The questions presented here are, first, whether the court of appeals abused its discretion in refusing to permit the filing of the second amended answer, which raised the issue of the rate being confiscatory, and, second, whether in view of the terms of the franchise the confiscatory character of the rates could, in any event, be made an issue.
Necessarily the question whether the franchise attempted by contract to make a rate for the twenty-five years must first be answered; and, if answered in the affirmative, then arises the question whether such contract possesses validity.
The per curiam opinion rendered in the case of United Fuel Gas Company v. Public Utilities Com *178 mission, post, answers the latter questions. Therein this court declared:
“Concerning the provision in Section 5 [of the ordinance of December '6, 1897] above referred to, it will be observed that it does not fix a definite rate or purport to fix any time during which the rate should be operative. If the franchise-contract had attempted to make a rate-contract covering a period of twenty-five years, it would have been invalid, because under the law then in force the city had no power to make a rate-contract for a longer period than ten years.
“Where an instrument is open to two constructions, one of which will establish its validity and the other will render it invalid, that construction will be adopted, if the language will permit, which validates the instrument.
“By the provisions of Section 2478, Revised Statutes, which was then in force the council had power ‘to regulate from time to time, the price’ which such company might charge. Inasmuch as Section 5 does not purport to fix any definite period for which 'the rate should be effective, council was free at any time to further regulate under the section referred to, and, by the provisions of Section 2479, Revised Statutes, the council was empowered to pass the rate ordinance which it passed in 1909 establishing a rate for ten years, as aforesaid.
“The passage of the ordinance in 1909, and its acceptance by the company, evidence that the parties themselves understood that the original Section 5 was a regulation under Section 2478, Revised Statutes, for an indefinite period.”
*179 In view of the expressed declaration of this court that the city of Ironton on December 6,1897, neither had the power to fix a rate for a period beyond ten years nor in fact had attempted so to do, in a proceeding such as this, affecting the rate which the defendant in error, the city of Ironton, was attempting to require the plaintiff in error to charge, the question of the confiscatory character of the rate was a proper issue for the plaintiff in error to make and it was an abuse of discretion on the part of the court to deny the right to file a pleading which would malee such issue.
While it is true that by Section 11363, General Code, providing that “Before or after judgment, in furtherance of justice and on such terms as it deems proper, the court may amend any pleading, process, or proceeding,” the court is vested with a sound discretion whether to permit the filing of such amendment, yet that discretion must be exercised in the “furtherance of justice,” and may not be exercised to defeat justice. Without the filing of the second amended answer the issue of the confiscatory nature of the rate was not made. The refusal to permit the filing of an answer making such issue was a denial to this plaintiff in error of the right to have such question judicially determined, and, if such determination result in a finding that the rates were so unreasonably low as to amount to a confiscation of property, a denial of its rights under the Fourteenth Amendment of the Constitution of the United States.
While this court in the case of United Fuel Gas Company v. Public Utilities Commission, supra, declared that the plaintiff in error had a valid fran *180 chise to occupy and use the streets, etc., for a period of twenty-five years, it expressly held that the city by the franchise-contract had not the power to contract for nor had it in fact contracted for rates for any definite period of time; that the ordinance thereafter passed in 1909, and accepted by the company, constituted a contract for the period of the ordinance only.
The legal principles declared in the United Fuel Company case, supra, clearly required a judgment reversing instead of affirming the order of the commission, therefore that case should be and is overruled. Having determined that a rate-contract exceeding a term of ten years was invalid for want of power to enter into such contract, we find that there is a clear conflict between this case and City of Cincinnati v. Public Utilities Commission, 98 Ohio St., 320, as to the principle here announced. In that case there was a franchise granted covering a period of twenty-five years. The utility after operating its plant for a period of a little less than twelve years found itself confronted with the city ordinance of August 20, 1917, fixing the price to be charged for natural gas for the ensuing ten years, claiming the right to do so at will during the entire life of the franchise. This is substantially the claim that is made in the instant case. In the Cincinnati case this court upheld the right of the city to establish and enforce a unilateral rate provision in its ordinance notwithstanding it was not assented to by the company. In that respect there is no distinction in principle between that case and this.
It has long been the settled law of this state, that, under Sections 3982 and 3983, General Code (for *181 merly Sections 2478 and 2479, Revised Statutes), neither the city nor the utility had any authority to contract as to the price of gas for a longer period than ten years. The first clause of the syllabus in City of Wellston v. Morgan, 59 Ohio St., 147, reads: “Where a statute gives power to a municipal corporation to contract for the lighting of its streets and other public grounds for a period not exceeding ten years, the conclusive implication is that such corporation is forbidden to contract for a longer period.”
In construing the grant of legislative power derived under the code sections referred to, the first proposition of the syllabus in Logan Natural Gas & Fuel Co. v. City of Chillicothe, 65 Ohio St., 186, reads: “A city council has no power * * * to compel a gas company, without its assent to the ordinance, to furnish gas in a manner and at a rate entirely at the option of the consumer.” In that case, construing the sections referred to, the opinion, on page 206, states that when a rate regulation is assented to in writing it “becomes a binding obligation on both the city and the company for ten years and no more. This is the extent of the authority granted to the council, and no other or different power is either expressed or implied.”
In City of Wellston v. Morgan, supra, a franchise had been granted by the city for a term of ninety-nine years. It was ther e suggested by the owner of the utility that if the ninety-nine year term was invalid, the ordinance could still be enforced for the statutory term of ten years. In disposing of that contention Spear, J., on page 157, said: “Now, the language of the statute is that the municipalities re *182 ferred to shall have power to contract for light for any term not exceeding ten years. This implies, with as much force as if it had been expressly stated, that the municipality shall not have power to contract for any term longer than ten years.”
Under the settled law in this state, excepting the decision in the Cincinnati case, supra, the legal contention of the defendant in error becomes untenable. Its argument is, in effect, that a municipality has a right not only to make a franchise-contract for a period of twenty-five years but also the right to enforce a compulsory rate at the end of a ten-year ■term. If the municipality had attempted arbitrarily to fix a rate for a period of twenty-five years there could be no doubt of its invalidity. The attempt here made effectuates the same purpose with the additional vice that it attempts to enforce a rate-contract against the consent of the utility, and if the allegations of the tendered second amended answer are true it is now attempting by the ordinance in question to enforce a rate which is confiscatory, which is equivalent to the seizure of private property without due process of law, as announced in the opinion of the \Chillicothe case, supra.
In view of our determination that the city council of Ironton exceeded its powers in imposing a compulsory rate regulation in the instant case, we find ourselves in direct conflict with the case, City of Cincinnati v. Public Utilities Commission, 98 Ohio St., 320. That case is, therefore, overruled. However, the opinion in that case concedes that an attempt to fix a confiscatory rate by any municipality would justify a recourse to the courts for the protection of property. This was in fact attempted to be done in *183 this case by the public utility asking leave to file its second amended answer, setting up the confiscatory nature of the rate sought to be imposed by the city of Ironton. On that issue the court below had complete jurisdiction, and that feature of the case was not involved, nor determined, between the parties in the case of United Fuel Gas Co. v. Public Utilities Commission, 103 Ohio St., 168.
The judgment of the court of appeals is reversed and the cause remanded to that court for the determination of this issue.

Judgment reversed.

Marshall, O. J., Jones, Matthias and Day, JJ., concur.
Robinson, J., concurs in judgment.
Wanamaker and Allen, JJ., dissent.
Marshall, C. J., Robinson, Jones and Day, JJ., are of opinion that should the court of appeals find the ordinance rates confiscatory the scheduled rates filed by the utility must necessarily prevail.
Robinson and Matthias, JJ., are of opinion that that question is prematurely raised, and should not be decided until it is properly presented.